# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **BILLY COOK,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:16-cv-1850 |
| ) | |
| **DARREN SETTLES, Acting Warden,** ) | Judge Kevin H. Sharp |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. The petitioner is serving a term of 70 years imprisonment imposed by the Sumner County Criminal Court on August 8, 2013, pursuant to a plea agreement. The respondent has filed an answer to the petition (ECF No. 17) stating that the petition should be denied because the claims raised therein are procedurally defaulted, do not comply with pleading requirements, are not cognizable in federal habeas proceedings and are without merit.

The matter is ripe for review and the court has jurisdiction. 28 U.S.C. § 2241(d). The respondent does not dispute that the petition is timely. (ECF No. 17 at Page ID# 54.) The respondent states that the petition at issue here appears to be the petitioner's first application for federal habeas relief. (*Id.*)

Because a federal court must presume the correctness of a state court's factual findings unless the petitioner rebuts this presumption with 'clear and convincing evidence," 28 U.S.C. § 2254(e)(1), and because the issues presented can be resolved with reference to the state-court record, the court finds that an evidentiary hearing is not necessary. *See Schriro v. Landrigan*,

550 U.S. 464, 474 (2007) (holding that if the record refutes a petitioner's factual allegations or otherwise precludes habeas relief, the district court is not required to hold an evidentiary hearing (citing *Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir. 1998))). Upon review and applying the AEDPA standards, the court finds that the petitioner is not entitled to relief on the grounds asserted. Accordingly, the petition will be denied and this matter dismissed.

I.  **PROCEDURAL BACKGROUND**

The state prosecution arose from the petitioner's sexual abuse of his two children, aged 3 and 5 years old, in August and September, 2012. On December 6, 2012, the petitioner was indicted by the Sumner County Grand Jury and charged with 50 counts of especially aggravated sexual exploitation of a minor; 11 counts of rape of a child; 17 counts of aggravated rape of a child and 5 counts of aggravated sexual battery. (ECF No. 18-2 at Page ID## 113-196.) On August 8, 2013, pursuant to a plea agreement entered into between the parties, the petitioner pleaded guilty to 50 counts of especially aggravated exploitation of a minor, 10 counts of rape of a child, and 17 counts of aggravated rape of a child in exchange for an effective sentence of 70 years. (*Id.* at Page ID## 197-260, ECF No. 18-3 at Page ID## 263-75.) That same day, the trial court imposed sentence pursuant to the plea agreement. (*Id.*)

On November 20, 2013, the petitioner filed a petition for post-conviction relief, alleging that his plea had not been voluntary and knowing, and that he was denied the effective assistance of counsel. (ECF No. 18-3 at Page ID## 276-87.) The post-conviction court appointed counsel, but no amended petition was filed. (*Id.* at Page ID## 289-90; 291-92.) The court conducted an evidentiary hearing on March 7, 2014, and thereafter, denied relief. (*Id.* at Page ID# 297; ECF No. 18-4.) The petitioner appealed to the Tennessee Criminal Court of Appeals ("TCCA"), which affirmed the denial of post-conviction relief. (ECF No. 18-9; *see also Cook v. State*, No.

M2014-00616-CCA-R3-PC; 2015 WL 2445868, at *1 (Tenn. Crim. App. May 22, 2015) ("*Cook I*").) The petitioner filed an application for permission to appeal to the Tennessee Supreme Court, which was denied on August 12, 2015.

On August 24, 2015, the petitioner filed a petition for the writ of habeas corpus in the Sumner County Criminal Court, (ECF No. 18-12 at Page ID## 513-16), which was denied on August 20, 2015 (ECF No. 18-12 at Page ID## 519-20). The petitioner appealed to the TCCA, which denied relief on March 8, 2016. (ECF No. 18-15; *see also Cook v. Cook,* No. M2015-01886-CCA-R3-HC, 2016 WL 877852, at *1 (Tenn. Crim. App. Mar. 8, 2016) ("*Cook II*").) The petitioner filed an application for permission to the appeal to the Tennessee Supreme Court, which was denied on June 23, 2016. (*Id.*)

## II. STATEMENT OF FACTS

At the plea hearing, the State set forth the factual basis for the petitioner's plea, describing the evidence as follows:

> On September 6th, 2012, the Hendersonville Police Department received a report of a burglary at the co[-]defendant's residence, Ashley Wright's residence, in Hendersonville. They reported to that burglary - - it became clear relatively quickly that it was not a burglary. There were some items missing including a camera, a computer, and some other electronic items. However, there was no sign of a forced entry. As this became clear, Ms. Wright pulled Detective Harris aside and told him that she had something that she needed to tell him.
>
> She then proceeded to disclose to Detective Harris that the defendant had been having extensive sexual contact with his three- and five-year-old children, his three-year-old daughter and his five-year-old son, that she had personally observed this, that he had taken pictures of that behavior and that he had posted that sexual activity - - that she believed he had posted some of that, those pictures, online on a Russian child pornography website.
>
> Some of the items that were missing were the camera that he used to take those pictures as well as the computer, the laptop computer that he had used to allegedly upload those images to the internet.

3

Pretty much right away the Hendersonville Police Department made arrangements to have the children interviewed, and that was done the next day. Both the three-year-old and the five-year-old disclosed numerous - - due to their ages, they couldn't pinpoint how many occasions, but it became clear from the interview, their forensic interviews, that this behavior, the sexual activity with their father had been going on for quite some time and involved sexual penetration, digital penetration, oral sex and slight penile-vaginal penetration and penile-anal penetration. In addition, they were encouraged to engage in sexual activity with each other, including penile-vaginal intercourse and oral sex with each other.

Upon interviewing the defendant, the defendant did not make any real admissions during his interview after the forensic interviews were done. However, he was arrested at that point. A few days later when his car was impounded or taken - - repossessed by the company that had sold it to Mr. Cook, Ms. Wright was called to come get her personal items out of there, and there was an SD card that fit in the camera that was found in the car. In addition, the camera that we believe was used to take the photographs that are part of this offense was found and had been pawned by Mr. Cook shortly before he was arrested.

A forensic examination of that SD card was done and hundreds - - well, probably about 60 to 70 sexually explicit images were found. We have charged 50 counts because some of them were close. They were taken over, I think, two or three separate dates. Most of the counts in this case came from specific incidents that we tied to the images on the card.

These images involved fondling by the children of the defendant's genitals. It involved pictures of the defendant engaging again in penile-vaginal or penile-anal penetration with both of the children. It involved sexual activity between the children, and quite frankly, Your Honor, I don't think I will ever not - - ever be able to forget the things that I saw in those images, and I'm sure Detective Harris can tell you the same thing. I think that basically sums up what the proof was.

\* \* \*

Ms. Wright did give a detailed statement in which she laid out the number of occasions and the dates that she saw the defendant engage in sexual activity with his children. The children were, as I stated, three and five at the time of the offenses. That is the basis for the aggravated rape of a child and rape of a child.

(ECF No. 18-1 at Page ID## 86-89.)

4

### III. ISSUES PRESENTED FOR REVIEW

In his *pro se* petition, the petitioner raises the following grounds for relief:

A. Whether the petitioner's guilty plea was knowing and voluntary

B. Whether trial counsel was ineffective

C. Whether the petitioner's Due Process rights were violated

(ECF No. 1 at Page ID ## 5-8.)

### IV. STANDARD OF REVIEW

This matter is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011); *Felkner v. Jackson*, 562 U.S. 594, 597 (2011). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). AEDPA prevents federal habeas "retrials" and "ensure[s] that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, this court may not rely on the decisions of lower federal courts. *Lopez v, Smith*, 135 S. Ct.1, 4 (2014); *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Tennessee state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644-45 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Indeed. "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Under AEDPA, 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Davis v. Ayala*, 135 S. Ct. at 2198; *see also White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (explaining that the Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'") (internal citation omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in United States Supreme Court cases, or if it decides a case differently than the United States Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from United States Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement'

on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## V. DISCUSSION

### A. Involuntary Guilty Plea

The petitioner asserts that his guilty plea was not voluntary and intelligent based, at least in part, on his claim that he needed medication and was told by his attorney that the only way to get the medication was to plead guilty. Additionally, the petitioner asserts that the prosecutor and trial counsel fabricated the evidence against him to obtain a guilty plea. The respondent argues that the petitioner's claim regarding fabricated evidence is procedurally defaulted because it was not raised as an independent claim in state court, but only as part of an ineffective-assistance-of-counsel claim, and that this claim fails to satisfy the pleading requirements set forth in Habeas Rule 2(c) because the petitioner fails to discuss with specificity the evidence that was allegedly fabricated. With respect to the petitioner's claim that his plea was not voluntary or intelligent, the respondent argues that this claim is meritless.

To the extent that the respondent argues that part of this claim is procedurally defaulted, the court concludes that the procedural default issue raises more questions than the claim on the merits, and thus, considers this claim on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

8

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970).

The defendant pleading guilty must be competent, *see id.* at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or...mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).

The petitioner raised this claim in his petition for post-conviction relief. After holding an evidentiary hearing, the trial court denied relief. On review, the TCCA summarized the testimony presented at the petitioner's post-conviction evidentiary hearing as follows:

At the post-conviction hearing, the petitioner testified that prior to the entry of his guilty pleas, he was examined by the staff at Middle Tennessee Mental Health Institute (MTMHI). When asked if he understood that the examination was to determine his competency to stand trial, the petitioner said, "I thought it was the same thing as when they were trying to see what my diagnosis was." The petitioner said that within one hour of his arrival at the facility, he was beaten by six staff members and that when he informed a doctor about the beating, the doctor told the petitioner that he deserved it. The petitioner asserted that by the time he arrived at MTMHI, the doctors had already formed an opinion of him based upon the evidence against him. The petitioner said that during the forensic examination, the doctor informed him that he was being tested for pedophilia.

The petitioner said that previously he had been diagnosed with schizophrenia "in a therapeutic group home . . . and in a mental hospital." He informed employees of the Sumner County Jail that he needed medication for schizophrenia and was told that he could not get the medication until he was in prison. The petitioner also told his trial counsel that he needed medication, and trial counsel said that it was not his responsibility to insure the petitioner got medication and was able to assist in his defense.

The petitioner acknowledged that at the guilty plea hearing, the trial court asked if he was taking any medication that would affect him mentally and that he advised the court he was taking Benadryl and Vistaril, an anxiety medicine that did not affect his ability to understand the proceedings. He complained, however, that the trial court did not ask if he needed any additional medication. The petitioner said that without his medication for schizophrenia, he was unable to comprehend what transpired at the guilty plea hearing. The petitioner contended that he accepted the effective seventy-year sentence in order to get his medication. The petitioner said that he could not recall everything that happened at the hearing, explaining that he occasionally experienced blackouts and that he thought he experienced such a blackout during the hearing.

On cross-examination, the petitioner acknowledged that someone with schizophrenia potentially could be competent to stand trial. He did not recall being evaluated by Dr. Keith Caruso.

Upon questioning by the post-conviction court, the petitioner said that he did not recall telling the trial court that he had some college education. The petitioner said he was unsure at what point he blacked out during the plea process. He maintained that he blacked out multiple times a day and that he had suffered blackouts since he was a child.

The petitioner said that trial counsel visited him only two or three times. Trial counsel did not show him evidence but told the petitioner that the State had DNA evidence and incriminating photographs. The petitioner did not recall trial counsel conveying the State's offer of settlement or discu[s]sing the potential sentences the petitioner faced. The petitioner also did not remember abusing his children or taking explicit photographs of them. He acknowledged that his signature was on the plea agreement but stated that he did not recall signing the document.

Trial counsel testified that he visited the petitioner at least three times. He never noticed the petitioner experiencing a blackout or seeming to be unaware of his surroundings. The petitioner always seemed to understand trial counsel's questions and responded appropriately.

Trial counsel said that he gave the petitioner a copy of the discovery materials and discussed the significant evidence the State had against him. In particular, they discussed the photographs, the children's forensic interviews, and Wright's statement.

Trial counsel said that the petitioner had been evaluated at MTMHI to determine his competency to stand trial. Thereafter, trial counsel filed a motion for a "separate, independent evaluation," which was granted. Dr. Keith Caruso performed the second evaluation but did not prepare a written report of the results. Nevertheless, Dr. Caruso's conclusions mirrored those of MTMHI: the appellant had mental problems, he was competent to stand trial, and he was malingering. The petitioner never indicated that he did not recall either evaluation.

Trial counsel asserted that the petitioner never mentioned that he was unable to function, that he was having mental issues, or that he could not assist with his defense. The petitioner also did not inform counsel of his need for medication. Trial counsel denied that the State had any DNA evidence against the petitioner and asserted that he did not tell the petitioner that such evidence existed.

Trial counsel informed the petitioner of the charges he was facing and the potential sentences he faced if he went to trial and was convicted. Trial counsel advised the petitioner that considering the evidence against him and the lengthier sentence he faced if convicted at trial, trial counsel considered the seventy-year sentence to be "reasonable." The petitioner agreed to plead guilty and accept a seventy-year sentence because he knew he would spend the rest of his life in jail.

Trial counsel said that before the guilty plea hearing, he told the petitioner to be respectful to the trial court and to tell the truth. Trial counsel also told

the petitioner to inform the court if he did not think counsel had represented him properly. Trial counsel watched the petitioner as he responded to questions during the guilty plea hearing but did not notice him "check out or black out." When asked if he pressured the petitioner to plead guilty, trial counsel responded, "If I did, I was unaware of it." Trial counsel said that he had a good relationship with the petitioner.

On cross-examination, trial counsel said that he told the petitioner that the State had overwhelming evidence against him. The petitioner never told trial counsel that petitioner was having blackouts or that he needed medication. The petitioner seemed to remember the events that led to his charges and never claimed to have problems with his memory. Nevertheless, trial counsel had concerns about the petitioner's mental health because "[t]he behavior he engaged in is not normal." Trial counsel said that when he read the petitioner's post-conviction petition, he became "quite angry because none of it seemed to be true or was true."

Trial counsel said that he informed the petitioner of his right to trial but advised against it. Nevertheless, he was surprised when the petitioner accepted the plea agreement. Trial counsel said that on the day of the guilty pleas, he spoke with the petitioner before and after the pleas. The petitioner never gave an indication that he was not lucid or that he was having mental health issues that day. Trial counsel fully discussed the plea agreement with the petitioner prior to the entry of the guilty pleas.

Upon questioning by the post-conviction court, trial counsel said that he was licensed to practice law in 1991 and that he was appointed to represent the petitioner. Trial counsel said that he had never seen the petitioner "act in the way that he did today on the witness stand in recalling events and discussing things."

Trial counsel said that he advised the petitioner that if he were convicted at trial, "the consequences would have been in the thousands of years." During trial counsel's first meeting with the State, the prosecutor expressed his intention to have the petitioner incarcerated for the rest of his life. Nonetheless, trial counsel tried to negotiate a "palatable offer," and they eventually agreed upon an effective sentence of seventy years. When trial counsel conveyed the offer to the petitioner, he accepted it the same day.

The petitioner actively participated in the discussion about the plea agreement and asked whether the trial court could recommend that he be housed in a special needs facility. Trial counsel said that he would ask for the recommendation, which the trial court ultimately agreed to make.

> Post-conviction counsel recalled the petitioner, and he accused trial counsel of lying during his testimony. Petitioner again asserted that trial counsel claimed the State had DNA evidence against him. He also complained that the doctors at MTMHI were prejudiced because of the charges against him and that they wanted "vengeance."
>
> The petitioner said that he wanted the post-conviction court to set aside his guilty pleas. He said he wanted to testify at trial so that a jury could hear the truth. When asked if he wanted a trial even if it would harm his children, the petitioner said, "It would . . . do more harm to everyone if my side is not heard. . . . Because I'm not heard and because—I didn't do any of this stuff . . . and it's hurting my kids for me not being there anymore. That's psychologically damaging. I grew up without both my parents."
>
> On cross-examination, the petitioner again asserted that he did not abuse his children. He stated that he had never seen the photographs the State had and that he did not believe they existed.
>
> When the post-conviction court asked the petitioner if he had informed trial counsel of his innocence, the petitioner responded that he could not remember.
>
> At the end of the hearing, the post-conviction court denied relief, holding that the petitioner's trial counsel was not ineffective and that the petitioner's guilty pleas were knowingly and voluntarily entered.

(ECF No. 18-9 at Page ID## 485-88; *Cook I*, 2015 WL 2445868, at *1-4.)

Having thoroughly summarized what had transpired at the post-conviction evidentiary hearing, the TCCA then considered petitioner's claim that his plea was not voluntary and intelligent, as follows:

> Initially, we note that at the guilty plea hearing, the petitioner asserted that he was not pressured or threatened into pleading guilty, that he understood his pleas, and that he nevertheless wanted to plead guilty.
>
> \* \* \*
>
> Further, at the end of the post-conviction hearing, the court said to the petitioner,
>
>> [T]his is one of the most fantastic act displays I've ever seen in a court of law, and I don't believe you one bit, sir. You testified

13

> today, put your hand on the Bible and [were] sworn to tell the truth, the whole truth, and nothing but the truth, and there's not much that you said, sir, that I believe.
>
> The post-conviction court stated that counsel's representation was 'admirable.' The post-conviction court specifically accredited the testimony of trial counsel, who asserted that he discussed the State's evidence with the petitioner, informed him of the charges he was facing, told him of the potential sentences he faced if he were convicted at trial, and reviewed the State's plea offer with him.
>
> The post-conviction [court] also found that
>
>> [the petitioner] never asked [trial counsel] about meds or taking care of that. [Trial counsel] never mentioned the fact that they had DNA. Every time he met with the [petitioner, they] got along well. They never had a falling out. When taking 70 years in this particular plea, . . . [the petitioner] knew he would spend the rest of his life in jail. And [trial counsel] talked about the negotiations and how the negotiations ended up at 70 years.
>>
>> The [petitioner] never told [trial counsel] that he could not recollect events. He went over all the overwhelming evidence with the [petitioner]. There was never any indication of him blacking out. There was never any indication of his not remembering anything. He always gave answers. He always remembered timeframes. And he never asked about helping to get any kind of medication.
>
> The court further found that the petitioner 'did what [he] believed to be best for [him] in this particular case.' Based upon the foregoing, the post-conviction court held that trial counsel was not ineffective and that the petitioner's guilty pleas were knowing and voluntary. The record does not preponderate against the post-conviction court's findings.

*Cook I*, 2015 WL 2445868, at *4-6.) Thus, the TCCA concluded that "the post-conviction court did not err by denying the petition."

The state court's determination that the petitioner's guilty plea was voluntary and intelligent was patently reasonable. There is nothing in the record to support the petitioner's assertion that he pleaded guilty because his counsel told him it was the only way for him to

obtain medication nor is there any support for petitioner's claim that the prosecutor and his counsel fabricated evidence to obtain his guilty plea. To the contrary, the record before the state court establishes that despite his protestations otherwise, the petitioner was competent, was fully aware of the evidence against him, was fully aware of the nature and consequences of his plea, and significantly, was given ample opportunity to inform the trial court of any questions, concerns or confusion he might otherwise have about the proceedings, his counsel or the consequences of his guilty plea.

The petitioner signed a written plea agreement, which he concede that he reviewed with his counsel and understood. (ECF No. 18-1 at Page ID# 92.) At the plea hearing, the prosecutor also read the agreement into the record. (*Id.* at Page ID## 84-86.) When asked by the trial court at the plea hearing, the petitioner admitted that he was entering the guilty pleas of his "own free will," that nobody was forcing him to enter a guilty plea, and that he had not been made any promises, other than those made part of the plea agreement, in order to obtain his guilty plea. (*Id.* at Page ID# 92-93.) When asked by the trial court, the petitioner explained that he was on Benadryl and Vistaril for his nerve, but that these medications had no effect on his understanding or decision-making ability. (*Id.* at Page ID# 93.) Petitioner admitted that he knew the consequences of his plea, that he understood that he would serve 70 years and that if he lived, he would not be released until he was 97 or 98 years old, and that if he were released he would be subject to supervision for the rest of his life. (*Id.* at Page ID## 95-96; *see also* Page ID# 101 (counsel stating, for the record, that he advised the petitioner that his "red date will be September 6, 2082, [and that he] did go over with [the petitioner] the lifetime supervision in the event that he is released on parole," and that counsel explained to the petitioner that he would be subject to the "sexual directives.") Petitioner had no questions about his sentence. (*Id.* at Page ID# 96.)

The petitioner affirmed that he was satisfied with his counsel's performance and that his counsel had gone over the elements, the punishment and the evidence of each crime to which he was pleading guilty. (*Id.* at Page ID## 96-97.) The petitioner affirmed that he had all the information that he needed to make the decision to plead guilty, that he was satisfied with the services of his counsel, who he agreed had given him "good advice and good representation," and that "there [was not] anything that [the petitioner] wanted [his counsel] to do that he did not do that was within his control as [the petitioner's] attorney." (*Id.*)

Additionally, the trial court noted for the record, "that I've observed Mr. Cook, that I have spoken with Mr. Cook. He is responsive. He's alert, well-oriented, level-headed. He understands my questions and understands his agreement." (*Id.* at Page ID # 93.) In response to the trial courts inquiry, the petitioner's attorney made clear that he believed that the petitioner understood "what he is doing today and the ramification of what he's doing." (*Id.*)

The trial court went over the rights that the petitioner was giving up, including the right to a jury trial, the right to confront and cross-examine witnesses, the right against self-incrimination, the right to representation at trial, and the right to appeal. (*Id.* at Page ID## 97-98.) Additionally, the trial court cautioned the petitioner that, "[w]hen you leave here today, there will be no appeal. Your sentence will be 70 years at 100 percent, and that will be permanent." (*Id.* at Page ID# 98.) The petitioner confirmed that he understood and that he had no questions. (*Id.*)

Finally, the petitioner confirmed that he had heard the evidentiary basis for his guilty pleas, as made part of the record by the prosecutor, and acknowledged his guilt with respect to the fifty counts of aggravated sexual exploitation of a minor, the ten counts of rape of a child and the seventeen counts of aggravated rape of a child. (*Id.* at Page ID# 99.)

16

In sum, considering "all relevant circumstances surrounding [the petitioner's guilty plea]," *Brady,* 397 U.S. at 749, the petitioner's decision to plead guilty was voluntary and intelligent, and was not the product of coercion or subterfuge. The state court, therefore, acted reasonably in concluding that the petitioner knowingly and voluntarily pleaded guilty.

### B. Ineffective Assistance of Counsel

The petitioner argues that his trial counsel was ineffective because he fabricated evidence to induce the petitioner to plead guilty. The respondent argues that this claim is procedurally defaulted. Because the procedural default issue raises more questions than the claim on the merits, the Court, considers this claim on the merits. *See Lambrix,* 520 U.S. at 525.

The standard for analyzing claims of ineffective assistance of counsel is well known and requires little explication under the circumstances present here. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. The court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* However, in analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

17

Because there is no support in the record for the petitioner's claim that his trial counsel, or anyone else, fabricated evidence, counsel could not have been ineffective.[1] Consequently, the state court decision denying relief was not objectively unreasonable and the petitioner's second ground for federal habeas relief must be denied.

**C. Due Process Rights**

In his final ground for habeas relief, the petitioner argues that his due process rights were violated because the trial court failed to question him about the facts underlying his guilty plea. The respondent argues that this claim is not cognizable on federal habeas. To the extent this claim was raised before the state court it was rejected by the TCCA because it could not form the basis of relief on state habeas. (ECF No. 18-, *see also Cook II*, 2016 WL 877852, at *2.)

The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis as Tennessee has done, *see* Tenn. R. Crim P. 11(b)(3), the federal Constitution does not mandate that they do so. *See Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975).

---

[1] Indeed this claim is completely incredible given that petitioner did not even raise the fabrication of photographs as an issue until nearly the end of the post-conviction evidentiary hearing, after: (1) the petitioner and his trial counsel had been questioned by the petitioner's post-conviction counsel, the prosecutor and the court, (ECF No. 18-4, Page ID## 317-76); (2) the petitioner had recounted his history of psychiatric problem, his incredulous history of frequent daily black-outs and his inability to remember almost anything about his plea hearing, (*Id.* at Page ID# 319-47); (3) the petitioner had explained repeatedly that he pleaded guilty and accepted a 70 year sentence in order to get his psychiatric medication, (*Id.* at Page ID## 327, 335, 340-341); (4) his post-conviction counsel asked him at least three times if he had anything else to tell the court, (*Id.* at Page ID## 327, 330-331, 332); (5) the court asked him about the evidence that he reviewed with his trial counsel, and specifically queried him about the photographs of his children, (*Id.* at Page ID# 339, 342, 343); and (6) the court asked him if he had any complaint about his trial counsel other than that trial counsel did not get him medication for his psychiatric condition so that he could have better understood what was happening, (*Id.* at Page ID# 344).

Moreover, to the extent that the petitioner intends to suggest that his guilty plea was obtained in violation of state law, his claim is not cognizable in this proceeding. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Accordingly, Petitioner is not entitled to relief on this claim.

## VI  CONCLUSION

For the foregoing reasons, the habeas corpus petition will be denied and this matter dismissed with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may not take an appeal unless a district court judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different matter or that the issues presented were "adequate to deserve encouragement to proceed further."' *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).)

In this case, the issues raised in the petition do not merit further review. Thus, the Court will deny a COA. The petitioner may, however, seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order is filed herewith.

_____
KEVIN H. SHARP
CHIEF UNITED STATES DISTRICT JUDGE